[Civ. No. 1103.    Fifth Dist.    July 1, 1969.]

CITY OF CERES et al., Plaintiffs and Appellants, v. CITY OF MODESTO et al., Defendants and Respondents.

Rushing & Clark and Albert G. Clark, Jr., for Plaintiffs and Appellants.

Elwyn L. Johnson, City Attorney, and Frank C. Damrell, Jr., Assistant City Attorney, for Defendants and Respondents.

GARGANO, J.—This litigation is the culmination of a long-standing dispute between two cities over the future annexation of certain contiguous unincorporated territory. The background facts, as gleaned from the record, are these: The dispute between the City of Modesto and the City of Ceres as to which city should eventually annex the unincorporated area of Stanislaus County that lies between the southern boundary of Modesto and the northern boundary of Ceres, was apparently brought to a head when 60 residents petitioned Ceres to annex the territory to that city. The disagreement was then presented to the Local Agency Formation Commission of Stanislaus County to resolve.[1] Subsequently,

---

[1] The complaint is somewhat uncertain as to the manner in which the disagreement was presented to the Local Agency Formation Commission.

the commission adopted a resolution establishing "the tentative future boundaries" for the feuding cities in a manner that gave the "no man's land" to the City of Ceres. A few months later Modesto commenced to prepare plans for the installation of a sewage disposal system. Under these plans the proposed sewer trunk lines will extend throughout the entire city and into the adjoining disputed unincorporated area. In the meanwhile, Ceres extended its own sewer lines to within 2,000 feet of the disputed area. It also made extensive studies on the feasibility of extending the lines into that area. Thus, when Ceres learned of Modesto's plans, it brought this action for injunctive relief. It was joined in the action by Thomas Lacey, a taxpayer of the City of Modesto. Modesto demurred to the complaint on the ground that neither plaintiff had stated a cause of action. The demurrer was sustained without leave to amend, and appellants have appealed from the judgment of dismissal.

On the one hand, Ceres contends that the resolution which the Local Area Formation Commission adopted legally fixed the future boundaries for the two disgruntled cities, and hence gave Ceres the sole right to annex the unincorporated territory that lies between them. It also contends that the proposed installation of sewer trunk lines by Modesto into the disputed area is a "wrongful and unlawful encroachment" into territory designated by the Local Agency Formation Commission "to be within the sphere of influence of the City of Ceres." On the other hand, Thomas Lacey asserts that the construction of sewer lines by Modesto in an unincorporated area which it can never annex, and at an expenditure of almost twice what it would have cost Ceres to construct similar sewer lines in the same area, is an illegal expenditure of Modesto's tax funds. Thus, both appellants vigorously assert that the court below erred when it sustained Modesto's demurrer without leave to amend.

██ It is of course true that a city may not annex territory unless the proposal to annex the territory is first submit-

---

However, it is reasonably apparent that a formal proposal to annex the disputed territory was not presented to or acted upon by the commission. On the contrary, according to the commission's minutes, the matter was presented on an informal basis, apparently by the city officials of each city who were also members of the commission. The commission minutes state: "A discussion was held on the possibility of an agreement between the City of Ceres and the City of Modesto concerning annexation of territory located between said cities. It was determined that this Commission and Staff would seek an understanding and agreement on existing boundaries."

ted to and approved by the local agency formation commission of the county in which the city is located (Gov. Code, §§ 35002 and 54791). In this connection, Government Code section 35002 provides: ''No petition seeking the annexation or transfer of territory to a city shall be circulated or filed, nor shall any public officer accept any such petition for filing, nor shall any legislative body initiate proceedings to annex or transfer on its own motion, until approval of the local agency formation commission is first obtained. . . .'' However, appellants do not allege in their complaint, nor do they presently contend, that the City of Modesto has instituted proceedings to annex the disputed unincorporated territory or that it is about to do so without first securing the approval of the Local Agency Formation Commission of Stanislaus County. Consequently, as to the City of Ceres, the crucial question is whether the Local Agency Formation Commission of Stanislaus County had the power to establish future boundaries for the two adjoining cities, and if so, whether its action foreclosed Modesto from making any further attempts to induce annexation proposals contrary to the tentative boundaries established by the commission. Stated in general terms, the question posed by Ceres is: Does a local agency formation commission have the power to decide which of two cities shall be entitled to annex certain unincorporated areas at sometime in the future, and if so, does its action also deprive one of the cities of the right to extend city services into that territory during the interim?

A local agency formation commission, commonly referred to as LAFCO, is a creature of the Legislature and has only those express (or necessarily implied) powers which are specifically granted to it by statute. In short, LAFCO is a public entity created by legislative fiat, and like similarly constituted public entities is a body of special and limited jurisdiction (*Conover* v. *Board of Equalization*, 44 Cal.App. 2d 283 [112 P.2d 341]). Thus, we must look to chapter 6.6 of ,division 2 of title 5 of the Government Code (the enabling act under which LAFCO was formed) for the answer to our questions. The pertinent sections of this chapter and division are sections 54774, 54775, 54790, 54791, 54792, 54796 and 54799.

Section 54774 reads in pertinent part: ''Among the purposes of a local agency formation commission are the discouragement of urban sprawl and the encouragement of the orderly formation and development of local governmental

agencies based upon local conditions and circumstances. One of the objects of the local agency formation commission is to make studies and to obtain and furnish information which will contribute to the logical and reasonable development of local governments in each county and to shape the development of local governmental agencies so as to advantageously provide for the present and future needs of each county and its communities.

"In addition to its other powers the local agency formation commission may initiate and make studies of existing governmental agencies. Such studies may include but shall not be limited to inventorying such agencies and determining their maximum service area and service capacities. If such studies are made, the commission may ask for land use information, studies, and plans of cities, counties and districts. Cities, counties, and districts shall comply with the request of the commission for such information and the commission shall make its studies available to cities, counties, and districts. In making these studies, the commission may cooperate with the county planning commissions.

"Such information and studies shall be used by the commission as the basis for regular decisions on proposals over which it has jurisdiction. The commission may recommend governmental reorganizations to particular agencies in the county, using the above information as the basis for such recommendations. Such recommendations shall be made available, upon request, to other governmental agencies or to the public."

Section 54775 reads in pertinent part: ". . . .

"(e) 'Local agency' means a city or a special district.

". . . . . . . . . .

"(g) 'Proceedings' means the procedure authorized and required by any law for the incorporation of a new city, the formation of a special district, the annexation of territory to a local agency or the exclusion of territory from a city, or the disincorporation of a city."

Section 54790 reads in pertinent part: "The commission shall have the following powers and duties, subject to the limitations upon its jurisdiction herein set forth:

(a) To review and approve or disapprove with or without amendment, wholly, partially or conditionally proposals for:

(1) The incorporation of cities;

(2) The formation of special districts, and

(3) The annexation of territory to local agencies, . . .

(4) The exclusion of territory from a city.

(5) The disincorporation of a city.

Section 54791 reads in pertinent part: "Proceedings shall not be initiated until application is made to the executive officer and approval is given by the commission of the principal county. . . ."

Section 54792 reads in pertinent part: "Each application shall be in such form as the commission may prescribe and shall contain:

(a) A statement of the nature of each proposal and the name or names of the districts or cities which would be affected thereby;

(b) A description of the boundaries of the territory proposed to be incorporated into a new city, to be formed into a special district, to be annexed to a local agency or to be excluded from a city;

. . . . . . . . . . ."

Section 54796 reads: "Factors to be considered in the review of a proposal shall include but not be limited to:

(a) Population, population density; land area and land use; per capita assessed valuation, topography, natural boundaries, and drainage basins; proximity to other populated areas; the likelihood of significant growth in the area, and in adjacent incorporated and unincorporated areas, during the next 10 years.

(b) Need for organized community services; the present cost and adequacy of governmental services and controls in the area; probable future needs for such services and controls; probable effect of the proposed incorporation, formation, annexation, or exclusion and of alternative courses of action on the cost and adequacy of services and controls in the area and adjacent areas.

(c) The effect of the proposed action and of alternative actions, on adjacent areas, on mutual social and economic interests and on the local governmental structure of the county.

(d) The definiteness and certainty of the boundaries of the territory, the nonconformance of proposed boundaries with lines of assessment or ownership, the creation of islands or corridors of unincorporated territory, and other similar matters affecting the proposed boundaries."

Section 54799 reads: "If the commission disapproves a proposal, no further proceeding shall be taken thereon. No application for a subsequent proposal involving any of the same

territory and undertaken under the same provisions of law may be filed with the commission for at least one year after the date of disapproval without the consent of the commission.''

It is eminently clear, from a careful reading of section 54774, that LAFCO was created by the Legislature for a special purpose, i.e., to discourage urban sprawl and to encourage the orderly formation and development of local governmental agencies. In short, LAFCO is the ''watchdog'' the Legislature established to guard against the wasteful duplication of services that results from indiscriminate formation of new local agencies or haphazard annexation of territory to existing local agencies. However, it is also eminently clear from the plain language of the first sentence of subdivision (a) of section 54790, when read in conjunction with sections 54791 and 54792, that the extent of LAFCO's power is to approve or disapprove ''wholly, partially or conditionally'' *actual* and *precise* proposals which are presented to it from time to time for its consideration.[2] Thus, it is not LAFCO's function or purpose to establish tentative boundaries for local agencies in futuro. On the contrary, the establishment of tentative boundaries for two existing cities for an indefinite period in the future, as was done by LAFCO in this case, has an aura of finality that is seemingly inconsistent with the provisions of section 54799. Under this section, a proposal to form a new local agency or annex territory to an existing local agency which has been rejected by LAFCO may be renewed at the expiration of one year.

In any event, even if we should assume arguendo, that LAFCO had the power to establish tentative future boundaries for the two adjoining cities as it purported to do in this case, its action did not *of itself* deprive Modesto of the power to extend municipal services into the contiguous unincorporated territory. A city is constitutionally empowered to furnish ''. . . light, water, power, heat, transportation, telephone service or other means of communication'' to inhabitants outside its boundaries. (Cal. Const., art. XI, § 19.) Moreover, the power of a city to provide sewage disposal services is a municipal function of such magnitude that it is one of the few powers that a city may exercise outside of its territorial limits without express authorization (*Southern Cal.*

---

[2]LAFCO has also been delegated certain other powers under the District Reorganization Act, but these powers are not pertinent to this appeal. (See Gov. Code, §§ 56003.1, 56250.)

*Gas Co.* v. *City of Los Angeles,* 50 Cal.2d 713 [329 P.2d 289]). Consequently, it is debatable whether the Legislature could have expressly delegated to LAFCO, a noncity agency, the power to interfere with an existing city's constitutional and inherent power to extend city services outside its own boundaries; it is even more debatable that the Legislature purported to do so by necessary implication in the statutory framework detailed above. If anything, it is reasonably apparent, from the language employed in section 54774, that the Legislature carefully avoided this troublesome political and legal question. Under the section, albeit LAFCO "may initiate and make studies of existing governmental agencies," the studies "shall be used by the commission as a basis for regular decisions on proposals over which it has jurisdiction." Significantly, the only proposals relating to the annexation of territory to existing cities over which LAFCO has jurisdiction are those mentioned in section 54790.

For the foregoing reasons, it is manifest that the City of Ceres has not stated and cannot state a cause of action against the City of Modesto on the theory presented in its complaint or in its brief. Thus, the court properly sustained Modesto's general demurrer to Ceres' cause of action (the first cause of action of the complaint) without leave to amend.     It is the rule that where the facts are not in dispute, and the nature of plaintiff's claim is clear, but under the substantive law no liability exists and no amendment would change the result, the sustaining of a demurrer without leave to amend is proper (*Routh* v. *Quinn,* 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215]; *Hollywood Circle, Inc.* v. *Department of Alcoholic Beverage Control,* 153 Cal.App.2d 523 [314 P.2d 1007]).

An entirely different question is presented as to Modesto's taxpayer, Thomas Lacey. In short, as to this appellant, the question is not whether LAFCO had the power to establish "future tentative boundaries" for the City of Modesto, or if so, whether its action, of itself, deprived Modesto of the power to extend its sewer lines into the disputed area. On the contrary, the real question is whether Modesto's proposed plan to construct permanent sewer lines in an area which it may never be able to annex, is an unconscionable waste of city funds entitling Lacey to injunctive relief under Code of Civil Procedure section 526a. According to this section, a citizen resident of any city may bring "[a]n action to obtain a judgment, restraining and preventing any illegal expenditure of,

*waste* of or injury to, the estate, funds, or other property . . .'' of the city.

Admittedly, the term ''waste'' as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion. To hold otherwise would invite constant harass-ment of city and county officers by disgruntled citizens and could seriously hamper our representative form of government at the local level. Thus, the courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expendi-ture which does not meet with a taxpayer's approval. On the other hand, a court must not close its eyes to wasteful, improvident and completely unnecessary public spending, merely because it is done in the exercise of a lawful power. In fact, the California Supreme Court, in *Harnett* v. *County of Sacramento*, 195 Cal. 676 [235 P. 445], paved the way for the granting of such relief when it upheld the lower court's injunction enjoining the Board of Supervisors of Sacramento County from holding an election on the adoption of a redis-tricting ordinance primarily because the ordinance would not have accomplished the desired result even if approved by a majority of the voters. Significantly, the court stated: ''It is true that courts will not enjoin the passage of an act by the legislative body solely upon the ground that it will be a void enactment, nor as a general rule will they interfere with the holding of an election when the election is provided for by a valid law and the forms prescribed by that law have been complied with by the authorities. Nevertheless . . . [w]here it is proposed to hold an election for the submission of a measure to the popular vote, and that measure will be wholly void and inoperative even if adopted by the people, the courts may, at the instance of a resident taxpayer, enjoin the holding of the election upon the ground that it will be a useless expenditure and waste of public funds (Code Civ. Proc. sec. 526a). There is no other adequate remedy for the protection of the rights of the taxpayers in such a situation and political rights are not curtailed.'' (195 Cal. at pp. 682-683.)

Applying these principles to the instant case, we conclude that appellant Lacey might have been able to state a cause of action for injunctive relief against the City of Modesto if he had been given the opportunity to do so. First, it is conceivable that the City of Modesto will derive no bene-fit of any kind from the installation of sewer lines in the

adjoining unincorporated territory unless the territory is ultimately annexed to Modesto. Yet, under Government Code sections 35002 and 54791, the disputed territory cannot be annexed to the City of Modesto without LAFCO's approval. Moreover, it is possible that the studies which LAFCO has already made and the factors that it considered (the factors delineated in Gov. Code, § 54796) before it adopted its resolution establishing future tentative boundaries for the feuding cities, are such that it is highly unlikely that it will approve any proposal to annex the territory to Modesto in the foreseeable future.[3] Second, it is conceivable that proceedings to annex the disputed territory to Ceres have or are about to commence. In fact, Ceres has probably completed its feasibility study and may be proposing to install the sewer lines in the area as soon as the annexation is completed. Manifestly, under all of these circumstances, the construction of permanent sewer lines by Modesto in the disputed territory would result in an unnecessary duplication of municipal services, would serve no useful purpose, and would constitute an unconscionable waste of Modesto's tax funds.

Up to this point we have assumed that the Local Agency Formation Commission of Stanislaus County did not approve an actual proposal to annex the disputed territory to Ceres and that annexation proceedings are not presently pending; appellants made no such contention in their complaint or in their brief on appeal. ■■■ It is, of course, possible that a formal proposal to annex the territory was in fact presented to and approved by LAFCO and that annexation proceedings have or are about to commence. If this is the case, and if Modesto proposes to install permanent sewer lines in the disputed area, not in a good faith attempt to service the residents but to thwart LAFCO and defeat the annexation, then this not only constitutes "waste," but is an illegal expenditure which can also be enjoined by a citizen resident under

---

[3]As we have already stated, LAFCO has the power to initiate and make studies of existing governmental agencies and to use the information derived from such studies as the basis for regular decisions on proposals over which it has jurisdiction. Thus, although LAFCO did not have the power to fix future tentative boundaries for the Cities of Modesto and Ceres, it did have the power to make studies which it will eventually need to act on any precise proposal which may be presented. In short, if the resolution which LAFCO adopted, establishing the future tentative boundaries for the Cities of Ceres and Modesto, is supported by actual studies and takes into consideration the factors delineated in Government Code section 54796, it may be used as a guideline to the commission's thinking even though it does not prevent interested residents from presenting additional proposals to annex the territory to Modesto.

Code of Civil Procedure section 526a. ■ In other words, the Legislature, by the adoption of appropriate legislation, has the exclusive power to regulate the formation of new cities and the annexation of territory to existing cities. (*People v. Town of Ontario,* 148 Cal. 625, 629 [84 P. 205]; *People v. City of Los Angeles,* 154 Cal. 220, 225 [97 P. 311].) It therefore had the power to delegate to LAFCO the responsibility of approving annexation proposals in order to insure the orderly development of cities and to prevent wasteful duplication of municipal services. ■ Consequently, if Modesto's sole purpose in extending its sewer lines into the adjoining disputed unincorporated territory is to defeat the legislative scheme in a matter over which the Legislature has exclusive jurisdiction, it could not successfully maintain that it was merely exercising an inherent power to extend sewage disposal services outside of its boundaries within the rationale of *Southern Cal. Gas Co.* v. *City of Los Angeles, supra,* 50 Cal.2d 713.

The judgment of dismissal, insofar as it pertains to the City of Ceres, is affirmed. The judgment of dismissal, insofar as it pertains to appellant Thomas Lacey is reversed with directions to the trial court to permit this appellant to amend his complaint if he is so disposed.

Conley, P. J., and Stone, J., concurred.