[No. AO22031. First Dist., Div. One. May 20, 1983.]

JOSEPH HORWATH et al., Plaintiffs and Respondents, v.
LOCAL AGENCY FORMATION COMMISSION OF
SAN MATEO COUNTY et al., Defendants and Appellants;
EAST PALO ALTO CITIZENS' COMMITTEE ON INCORPORATION,
Real Party in Interest and Appellant.

**COUNSEL**

James P. Fox, District Attorney, and L. M. Summey, Assistant District Attorney, for Defendants and Appellants.

Thomas R. Adams, Ann Broadwell and Adams, Broadwell & Russell for Real Party in Interest and Appellant.

Paul N. McCloskey, Jr., Patricia S. Brody, Denis R. Salmon and Brobeck, Phlegar & Harrison for Plaintiffs and Respondents.

**OPINION**

**ELKINGTON, Acting P. J.**—The clerk of the County of San Mateo has called an election to be held Tuesday, June 7, 1983, for the purpose of determining (1)

whether a city of East Palo Alto shall be organized, and (2) whether two public entity districts wholly within its proposed boundaries shall be dissolved, with their facilities reorganized as part of the proposed city.

The election has been called pursuant to the "District Reorganization Act of 1965," found in Government Code section 56000 et seq. (hereafter DRA). DRA, among other things, provides for the reorganization of public districts, upon a majority vote, at an election petitioned for by not less than *5 percent* of the resident voters within the concerned territory.

The superior court concluded that although proceedings under DRA were otherwise proper, the "Municipal Organization Act of 1977," codified as Government Code section 35000 et seq. (hereafter MOA), "must prevail as to procedure." Since MOA requires, for an election organizing or incorporating a city, a petition of "not less than *25 percent* of the registered voters residing in the area" (Gov. Code, § 35130, italics added), the superior court found the scheduled election legally uncalled for, and *invalid*.

Accordingly, it was adjudged that a writ of mandate issue commanding the above-captioned county commission, board, and officers "to cease any further proceedings" for the June 7, 1983 election.

The appeal before us is from the judgment ordering the writ of mandate to issue.

We narrate now, what appears to be the uncontroverted factual-procedural context of the case.

In 1981, a group of interested persons, terming themselves the "East Palo Alto Citizens' Committee on Incorporation," apparently acting under the "not less than 5 percent of the registered voters" provision of DRA, petitioned the county's Local Agency Formation Commission (LAFCO) for the incorporation or organization of a city to be known as East Palo Alto, and the contemporaneous dissolution of *three* public entity districts of the area whose facilities would be reorganized as part of the proposed city. LAFCO approved, and an election was ordered and held. A majority of the electors voted for organization of the city of East Palo Alto, and for dissolution of *two* of the three districts. The two districts lay wholly within the proposed city's boundaries. The third was partially outside such boundaries, and a narrow majority voted against its dissolution. As a result the entire election failed.

Thereafter the San Mateo County Board of Supervisors enacted a resolution seeking incorporation of East Palo Alto.

In October 1982, the East Palo Alto Citizens' Committee on Incorporation again petitioned LAFCO for incorporation or organization of East Palo Alto, and for dissolution of the two public entity districts whose dissolution had previously been voted for, with transfer of their facilities to the proposed city. (This time the third district was *not* included.) The petition was according to DRA's procedures, and carried not less than *5 percent* of the names of the registered voters within its embraced territory. LAFCO approved the petition, the San Mateo County Clerk found it to comply with DRA's signature and other requirements. An election thereon has, as indicated, been set to be held June 7, 1983.

Thereupon interested citizens, the four above-named respondents, Horwath, Sanders, Breckenridge, and Cenedella, filed the instant mandate petition, joining as defendants LAFCO and the San Mateo County Board of Supervisors and Clerk. The East Palo Alto Citizens' Committee on Incorporation were joined in the action as "real party in interest."

The critical issue of the appeal is whether, as stated by the superior court, "even though the proceedings under DRA allow an incorporation [of a city], the incorporation sections of MOA must prevail as to procedure," and that therefore "the petition had to be signed by 25 percent of the voters of the proposed municipal corporation."

Before addressing ourselves to that issue, we make some observations.

In respect of the formation of the contemplated municipality of East Palo Alto the parties, and relevant statutes, use the terms "incorporation," "formation" and "organization" interchangeably. We give to them, in the context of the case before us, their obvious synonymous meaning.

There is a strong public policy, in "planning and shaping the logical and orderly development and coordination of local governmental agencies" so as to avoid their costly and illogical sprawl, and proliferation, and in the "*reorganization*" of such agencies where it will "advantageously provide for the present and future needs of each county and its communities." (Gov. Code, § 54773.) (Section 54773 and DRA were enacted contemporaneously; see Stats. 1965, chs. 2043, 2045.)

"Plainly" the need "to halt the proliferation of special districts [and] to guard against wasteful duplication of services [which DRA was designed to halt, is] of pervasive state concern." (*Friends of Mount Diablo* v. *County of Contra Costa* (1977) 72 Cal.App.3d 1006, 1011 [139 Cal.Rptr. 469]; and see *City of Ceres* v. *City of Modesto* (1969) 274 Cal.App.2d 545, 550-553 [79 Cal.Rptr. 168].)

"[A] single governmental agency, rather than several limited purpose agencies, is better able to assess and be accountable for community service needs and financial resources and, therefore, is the best mechanism for establishing community service priorities." (Gov. Code, § 35000.)

And, at the risk of repetition, it will be useful and convenient in our ensuing discussion, to bear in mind that *DRA* refers to the *District* Reorganization Act of 1965 (Gov. Code, § 56000 et seq.) while *MOA* is the term here given the *Municipal* Organization Act of 1977 (Gov. Code, § 35000 et seq.).

■ We turn to a consideration of the question, whether MOA commanded that the instant "petition had to be signed by 25 percent of the voters of the proposed municipal corporation."

It seems proper here to *expressly* point out that the proposed new city of East Palo Alto was a *"district,"* as the term is used and defined by DRA.

DRA's section 56039, subdivision (c), provides that the *"district,"* as therein used, includes a "new city" proposed to be incorporated, *"when the board of supervisors does not object to such incorporation."* Elsewhere DRA reiterates: "The incorporation of a new city, which is proposed as a part of a plan of reorganization, may also be conducted in accordance with the procedures for reorganization set forth in this division unless the board of supervisors objects thereto." (Gov. Code, § 56003.1.) " 'Change of organization' . . . includes . . . incorporation of new cities when the board of supervisors does not object to such incorporations." (Gov. Code, § 56028.) Here, the board of supervisors *expressly sought* "such incorporation."

It is notable also that cities generally are deemed "districts" by DRA for purposes of "reorganization" or "changes of organization." Government Code section 56068 provides: " 'Reorganization' means one or more changes of organization proposed for: (1) Each of two or more subject districts, *including cities,* . . ." (Italics added.)

We note further that DRA is found in *Title 6, Division 1,* Government Code, while MOA is framed as Title 4, Division 2 of the same code.

DRA (§ 56001) provides that: "This division shall provide the sole and exclusive authority and procedure for the initiation, conduct and completion of changes of organization and reorganization."

MOA (§ 35002) states: *"Except as provided in Division 1 (commencing with Section 56000) of Title 6* [i.e., DRA], this part shall provide the sole and exclusive authority and procedure for the initiation, conduct, and completion of

city incorporations, municipal reorganizations, or changes of organization." (Italics added.)

The proposed new city which, with territorially related public entity districts, was sought to be organized or reorganized, was thus a *"district" subject to the 5 percent signature* and other procedural requirements of *DRA.*

We are unpersuaded that it is unreasonable to ascribe a legislative intent, that while ordinarily signatures of 25 percent of the area's registered voters are required for a city's formation election, the far lesser amount of 5 percent is required for such purpose under DRA. It will be seen, unlike MOA, that DRA requires, in addition to its required signatures for such an election, the nonobjection of the county's board of supervisors. Both such requirements would seem to reasonably assure that the election's calling, and its consequent expense, was grounded in substantial and responsible public support.

Moreover, and particularly where the legislative purpose is otherwise apparent, "'criticisms of policy, wisdom or technique inherent in any legislative enactment "are matters with which the courts have no concern, such arguments being proper ones to address to the legislature for its determination."'" (*Richardson* v. *City of San Diego* (1961) 193 Cal.App.2d 648, 651 [14 Cal. Rptr. 494].)

Another contention of the appeal is founded on MOA (Gov. Code, § 35264). There it is provided that: "If proceedings for incorporation [of a city] are terminated . . . by failure of a majority of the voters to confirm the incorporation . . ., no new proposal for incorporation of the same or substantially the same territory may be filed with the [local agency formation] commission within two years of the date of the resolution terminating proceedings; provided, however, that the commission may waive the provisions of this section if it finds such provisions are detrimental to the public interest." Here the second proposal *was* submitted within two years of the voters' rejection of the first. *But* LAFCO, finding the statute's application "detrimental to the public interest," *did waive its provisions.*

■ LAFCO, it will be noted, is a quasi-legislative administrative agency. "'. . . [T]he power exercised is legislative and political rather than judicial.' . . . 'Mere ascertainment of facts as a basis for legislation does not render the process judicial or anything less than quasi legislative.' . . . 'An administrative order, legislative in character, is subject to the same tests as to validity as an act of the Legislature.'" (*City of Santa Cruz* v. *Local Agency Formation Com.* (1978) 76 Cal.App.3d 381, 387, 388, 389 [142 Cal.Rptr. 873]; and see authority there collected.)

It is contended that LAFCO's required "finding" that MOA's section 35264 would be "detrimental to the public interest" was "not supported by substantial evidence on the whole record." (No complaint is made (nor could there reasonably be) of the fact that LAFCO's finding was not in writing. See *City of Santa Cruz* v. *Local Agency Formation Com.*, *supra*, 76 Cal.App.3d 381, 386-388.)

We assume, but only arguendo, that MOA's section 35264's requirement would ordinarily be applicable to the here questioned DRA proceedings. But we observe that LAFCO had previously approved, and presently had before it a resolution of the San Mateo County Board of Supervisors approving, incorporation of East Palo Alto. It was further an established fact that a majority of the area's voters desired its organization. Moreover, it appeared that upon such incorporation, East Palo Alto would be entitled to annual state and federal subventions of between $800,000 and $1,500,000, which otherwise would be lost to the new city, and the county. These, and perhaps other, matters manifestly constituted substantial evidence on the whole record supportive of LAFCO's finding.

And: "Administrative findings need not be stated with the formality required of judicial findings (see *Temescal Water Co.* v. *Dept. Public Works*, 44 Cal.2d 90, 102 [280 P.2d 1]) and are to be liberally construed to support rather than defeat the order under review. (See *Jack P. Meyers, Inc.* v. *Alcoholic Bev. etc. Appeals Bd.*, 238 Cal.App.2d 869, 873 [48 Cal.Rptr. 259].)" (*Realty Projects, Inc.* v. *Smith* (1973) 32 Cal.App.3d 204, 213 [108 Cal.Rptr. 71].)

Moreover, the types of "finding" required of LAFCO, as to whether application of MOA's section 35264 would be "detrimental to the public interest," and of its supportive "substantial evidence," was pointed out in *So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 177 [223 P.2d 1], where it was said:

"The credibility of the witnesses and weight of the evidence cannot be considered on this appeal. It is·clear . . . that the applicant has the burden of proving, at least, that public interest and the purposes of the act would not be detrimentally affected by the proposed new track. There is considerable discussion by the parties as to whether the applicant must affirmatively show that the public interest would be benefited or merely that it would not suffer, but it is not necessary to pass upon that point. Thus it was for the board to determine whether plaintiff's evidence was such that the burden had been met. This is especially true where most of the evidence consists of opinions, and the issues involved—public interest and purposes of the act—are general and incapable of exact definition. Indeed, plaintiff states in its brief: 'A moment's reflection upon the very nature of the determination that the board was required to make

shows that such determination must be predicated, not upon provable concrete facts, but upon opinion evidence exclusively.' In such a case, wide discretion is necessarily vested in the fact-finder."

For all of these reasons we conclude that the subject petition did *not* have "to be signed by 25 percent of the voters of the proposed municipal corporation." The judgment of the superior court must be reversed.

The judgment is reversed; the superior court will enter judgment against the petitioners for mandate who are the respondents on this appeal.

Holmdahl, J., concurred.

**NEWSOM, J.**—I respectfully dissent.

Having concluded that certain provisions in the competing statutes cannot be harmonized, I view the later expression of legislative intent contained in Government Code section 35000 et seq. as controlling.

Like the trial judge, I attach great significance to the fact that Government Code section 35130 specifically addresses the signature requirement for an *incorporation* petition, while the D.R.A. (Gov. Code, § 56000 et seq.) which provides a 5 percent sign-up for each of the other procedures it addresses, has no such specific requirement respecting incorporation.

I also regard LAFCO's conclusion, pursuant to Government Code section 35264, that the two-year waiting period, being "detrimental to the public interest," was waived, as wholly unsupported by factual findings required of the Agency (Gov. Code, § 35264).

For these reasons I would affirm the superior court's order.

Respondents' petition for a hearing by the Supreme Court was denied June 15, 1983.