TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 92-202 |
| of | : | |
| | : | SEPTEMBER 3, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE EDWARD R. JAGELS, DISTRICT ATTORNEY FOR THE COUNTY OF KERN, has requested an opinion on the following question:

May a local public agency properly pay that portion of its attorneys' State Bar dues known as the "Hudson fees"?

CONCLUSION

A local public agency may properly pay that portion of its attorneys' State Bar dues known as the "Hudson fees" if the agency is under a contractual obligation to make such payment as part of the attorneys' compensation.

ANALYSIS

Article VI, section 9 of the Constitution provides that the State Bar of California is a public corporation and that, except for judges, "[e]very person admitted and licensed to practice law in this State is and shall be a member of the State Bar . . . ." The legal profession in the State of California is governed by the State Bar Act (Bus. & Prof. Code, §§ 6000-6190.6).[1] This enactment charges the State Bar with the responsibility of "aid[ing] in all matters pertaining to the advancement of the science of jurisprudence or to the improvement of the administration of justice . . . ." (§ 6031, subd. (a).)

In carrying out its function respecting the administration of justice, the State Bar acts in an advisory capacity to the Supreme Court on matters of admission to the practice of law (§ 6064), disbarment and suspension (§ 6100), and establishing ethical codes of conduct (§ 6076). Thus "[t]he State Bar of California was created, not to participate in the general government of the

---

[1]All references hereafter to the Business and Professions Code are by section number only.

State, but to provide specialized professional advice to those with the ultimate responsibility of governing the legal profession. Its members and officers are such not because they are citizens or voters, but because they are lawyers." (*Keller* v. *State Bar* (1989) 496 U.S. 1, 13.)

The State Bar "is an entity commonly referred to as an "integrated bar" --an association of attorneys in which membership and dues are required as a condition of practicing law in a State." (*Keller v. State Bar*, *supra*, 496 U.S. 1, 5.) In *Keller*, the United States Supreme Court held that while membership in an integrated bar association may be constitutionally required by a state as a condition of the right to practice law (*id.* at p. 8), the integrated bar is "subject to the same constitutional rule with respect to the use of compulsory dues as are labor unions representing public and private employers" (*id.* at p. 13) and therefore may not use compulsory dues to finance "activities having political or ideological coloration which are not reasonably related to the advancement of [the] goals [of regulating the legal profession and improving the quality of legal services]" (*id.* at p. 15; see *Abood* v. *Detroit Board of Education* (1977) 431 U.S. 209). Attorneys who object to particular expenditures of the State Bar under the aforestated rule may avail themselves of the general procedures set forth in *Teachers* v. *Hudson* (1986) 475 U.S. 292. (*Keller v. State Bar*, *supra*, 496 U.S. 1, 17.) These procedures "include an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decision-maker, and an escrow for the amounts reasonably in dispute while such challenges are pending." (*Teachers v. Hudson*, *supra*, 475 U.S. 292, 310.) Fees subject to these procedures have thus been denominated as "Hudson fees."

The State Bar acknowledges that a certain portion of its membership fees is used to fund expenditures which are not germane to the regulation of the legal profession or improving the quality of legal service available to the people of the state. Attorneys may challenge the State Bar's determination concerning the amount constituting the Hudson fees. Through arbitration, the challengers are eligible to receive a rebate of the difference between the Hudson fees established by the State Bar and the amount which is actually found to have been used in support of non-germane activities. Bar members who do not actively challenge the State Bar's determination, but who affirmatively indicate that they are unwilling to have any of their bar dues spent on non-germane activities, are allowed to deduct the State Bar determined amount from their annual dues. For 1992, the Hudson fees deduction was set at $4 per attorney by the State Bar. Total annual dues for 1992, including the Hudson fees, amounted to $478 for an attorney in practice for three or more years.

The question presented for analysis is whether a local public agency (such as a city or county) which employs attorneys on its professional staff may pay the entire annual dues, including Hudson fees, for its attorneys. The desire of individual attorneys that the Hudson fees not be paid on their behalf would, however, be honored by the public agency.[2] In light of the non-compulsory nature of the Hudson fees and their use in support of political or ideological activities, several issues arise as to whether the agency may lawfully pay the fees on behalf of their attorneys.

We first note that as a general proposition payment of the Hudson fees would not serve to promote the purposes of the public agencies in question. The United States Supreme Court in *Keller* v. *State Bar, supra*, 496 U.S. 1, 15, set forth some of the State Bar's activities which were alleged by the petitioners to be non-germane:

---

[2]Because of the ability of each attorney to ensure that the State Bar either does or does not receive the Hudson fees pertaining to his or her membership, we do not view the question before us as directly raising any First Amendment issues.

"Petitioners assert that the State Bar has engaged in, *inter alia*, lobbying for or against state legislation (1) prohibiting state and local agency employers from requiring employees to take polygraph tests; (2) prohibiting possession of armor-piercing handgun ammunition; (3) creating an unlimited right of action to sue anybody causing air pollution; and (4) requesting Congress to refrain from enacting a guest worker program or from permitting the importation of workers from other countries. Petitioners' complaint also alleges that the conference of delegates funded and sponsored by the State Bar endorsed a gun control initiative, disapproved statements of a United States senatorial candidate regarding court review of a victim's bill of rights, endorsed a nuclear weapons freeze initiative, and opposed federal legislation limiting federal-court jurisdiction over abortions, public school prayer, and busing."

Certainly some of the foregoing activities touch upon issues which might be of concern to public agencies. However, a governmental entity would have no control over the positions taken by the State Bar's conference of delegates, and a resolution contrary to the interests of a particular public agency might be passed as readily as one favoring those interests. Similarly, the State Bar's own legislative agenda would not necessarily coincide with the interests of a given local government and would largely be beyond local influence.

As a practical matter, local governments that have traditionally paid the State Bar dues of their attorneys have done so to compete with employers in the private sector who have adopted the practice. In addition, payment of the dues by an employer helps ensure that the attorneys remain in good standing with the State Bar. However, after the *Keller* case was handed down, the Hudson fees became optional.[3] No longer did local governments need to pay the fees component in order to maintain competitiveness or the ability of their attorneys to practice law.

The only obligation a local government would now have to pay the optional Hudson fees for their attorneys would stem from an existing collective bargaining agreement, if any, which provides for such payment. In that event, payment of the Hudson fees would be part of a lawfully negotiated compensation and benefits package. We find no legal impediment to the inclusion in a collective bargaining agreement of a provision which requires the public employer, as part of its employees' total compensation package, to make a contribution to a given institution on behalf of any employee who so chooses.

The remaining issue is whether a public agency may include the Hudson fees as part of the State Bar dues payment in the absence of a specific contractual obligation to do so. In such circumstances the public employer would in effect be designating the State Bar as the recipient of public funds donated by the agency at the discretion of its attorneys. Unlike a United Way contribution, for example, payment of the Hudson fees would not come out of the attorney's salary. The attorney would not be given the opportunity to select an alternative donee and would not receive any cash in lieu thereof.

As a donation of public funds rather than a form of compensation, payment of the Hudson fees portion of the State Bar dues by a local government would be subject to special scrutiny. Assuming that legislative authority exists which would permit a local government to

---

[3]State Bar section fees, while optional, are not at issue here because their payment permits an attorney to receive continuing legal education in areas of specialization that may be germane to the public practice of law.

donate funds to support the political activities of another entity,[4] we would conclude that such a donation to the State Bar would be subject to an action by a taxpayer for injunctive relief under the terms of Code of Civil Procedure section 526a.

Code of Civil Procedure section 526a provides in part:

"An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

As stated by the Supreme Court in *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 267-268:

"The primary purpose of this statute, originally enacted in 1909, is to `enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' (Comment, Taxpayers' Suits: A Survey and Summary (1960) 69 Yale L.J. 895, 904.)

"California courts have consistently construed section 526a liberally to achieve this remedial purpose . . . ."

In *TRIM, Inc.* v. *County of Monterey* (1978) 86 Cal.App.3d 539, 542, the Court of Appeal noted:

"Taxpayers clearly have standing to challenge *illegal* expenditures of funds by county officials under section 526a (*Blair* v. *Pitchess*, *supra*, 5 Cal.3d at p. 268), and may also sue to enjoin *wasteful* expenditures (*Los Altos Property Owners Assn.* v. *Hutcheson* (1977) 69 Cal.App.3d 22, 29, hrg. den.)."[5]

"Waste," as that term is used in Code of Civil Procedure section 526a, has been defined as a "useless expenditure of funds" (*Harnett* v. *County of Sacramento* (1925) 195 Cal. 676, 683) and an expenditure of funds that "provides no public benefits." (*Sundance* v. *Municipal Court* (1986) 42 Cal.3d 1101, 1139.) In *Sundance*, the Supreme Court endorsed the following concept of "waste" contained in *City of Ceres* v. *City of Modesto* (1969) 274 Cal.App.2d 545, 555:

". . . `[T]he term "waste" as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion. To hold otherwise would invite constant harassment of city and county officers by disgruntled citizens and could seriously hamper our representative form of government at the local level. Thus, the courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they

_____

[4]As an example, a county might give financial support for lobbying and other political activity by the County Supervisors Association of California or a city might give similar support for the activities of the League of California Cities.

[5]Code of Civil Procedure section 526a may also be used to enjoin state officials from making improper expenditures of public funds. (See *Los Altos Property Owners Assn.* v. *Hutcheson* (1977) 69 Cal.App.3d 22, 27-29.)

attempt to enjoin every expenditure which does not meet with a taxpayer's approval. On the other hand, a court must not close its eyes to wasteful, improvident and completely unnecessary public spending merely because it is done in the exercise of a lawful power.'" (*Id.* at pp. 1138-1139.)

Under Code of Civil Procedure section 526a, taxpayers have been permitted to sue to avoid the improper expenditure of public funds in widely varying situations. In *Harnett* v. *County of Sacramento, supra*, 195 Cal. 676, the county board of supervisors was enjoined from holding an election because, even if the electorate had approved the ordinance in question, the ordinance would have been unlawful and thus could not have been enforced. In *City of Ceres* v. *City of Modesto*, *supra*, 274 Cal.App.2d 545, it was held that a taxpayer may state a cause of action by alleging that a city would reap no benefit from running sewer lines into an unincorporated territory for which another city had already commenced annexation proceedings and planned to install the sewer lines. In *Los Altos Property Owners Assn.* v. *Hutcheson, supra*, 69 Cal.App.3d 22, the court held that taxpayers stated a cause of action by alleging that a school district would be expending public funds on a consolidation plan costing a great deal more than the alternative plans considered, without a finding of any additional public benefit.

On the other hand, in *TRIM, Inc.* v. *County of Monterey, supra*, 86 Cal.App.3d 539, 543, it was held that a cause of action was not stated where the taxpayer organization made "no objection to any program or project, but merely generally alleges that the county is wasting money because it is not collecting all that it could in revenues." In *Sundance* v. *Municipal Court, supra*, 42 Cal.3d 1101, 1139, it was held that a county's decision to continue arresting and detaining chronic alcoholics did not constitute waste merely because the alternative -- civil detoxification -- was "a more prudent allocation of funds" and the fact "that the County's funds could be spent more efficiently" was not a sufficient basis for the court to interfere with the county's legislative judgment.

Here, except for those situations in which an existing collective bargaining agreement or other contract requires the payment of the Hudson fees portion of the State Bar dues, there is little basis for contending that payment of the fees by a public agency would be a legitimate expenditure of public funds. The expenditure would go beyond "an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion." (*City of Ceres* v. *City of Modesto, supra*, 274 Cal.App. 545, 555.) Unlike the situation in *Sundance* v. *Municipal Court, supra*, 42 Cal.3d 1101, the Hudson fees expenditure may be viewed as "totally unnecessary," since the agency's attorneys may continue to practice law irrespective of whether the Hudson fees are paid.

Although the Hudson fees may ultimately be expended for some societally beneficial use, such expenditure may not be regarded as being made with a given public agency's needs in mind. Public agency control over the use of the Hudson fees is lacking, and the connection between the local agency's public purposes and the various uses to which the fees are ultimately put is best described as attenuated.

Finally, while it may be the practice of many private law firms and corporations to pay the entire State Bar dues of their attorneys, the refusal of public agencies to follow suit presumably will not place them at a competitive disadvantage in the recruitment or retention of their attorneys in the circumstances presented.[6]

---

[6]The fact that the challenged expenditure is small in amount would likely not be considered an impediment to bringing an action under Code of Civil Procedure section 526a. (See *Blair* v. *Pitchess*, *supra*, 5 Cal.3d 258, 268.)

We conclude that a public agency may properly pay that portion of its attorneys' State Bar dues known as the Hudson fees if the agency has a contractual obligation to make such payment as part of the attorneys' compensation. Without such obligation, payment would be subject to a taxpayers' suit pursuant to Code of Civil Procedure section 526a as a waste of public funds.

* * * * *