TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 93-1204 |
| of | : | |
| | : | July 20, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

---

The CALIFORNIA POSTSECONDARY EDUCATION COMMISSION has requested an opinion on the following question:

May the California Postsecondary Education Commission adopt formal regulations setting forth the standards of review required by Congress for the state postsecondary review program?

CONCLUSION

The California Postsecondary Education Commission may not adopt formal regulations setting forth the standards of review required by Congress for the state postsecondary review program.

ANALYSIS

The state postsecondary review program was established by Congress as part of the 1992 reauthorization of the Higher Education Act (20 U.S.C. § 1099a et seq.). The program is intended to ensure accountability of those postsecondary institutions within each state that participate in federal student financial aid programs. The stated goal is reduce the number of student loan defaults.

In order to carry out the purposes of the program, the Secretary of the United States Department of Education ("Secretary") is directed to enter into an agreement with an agency in each state, designated according to state law, to be known as the state postsecondary review entity. (20

U.S.C. § 1099a-1.)  The entity designated in California is the California Postsecondary Education Commission ("Commission").[1]

Pursuant to its agreement with the Secretary, the Commission is responsible for conducting a review of the institutions of higher education reported to it by the Secretary.  The review must be conducted "in accordance with published State standards that are consistent with the constitution and laws of the State, developed in consultation with the institutions in the State, and subject to disapproval by the Secretary."  (20 U.S.C. § 1099a-3(d).)  The review is to assess institutional compliance in enumerated specified areas, e.g., availability of admission requirements, methods to assess a student's ability to succeed, enforcement of standards relating to academic progress, maintenance of health and safety standards, financial and administrative capacity, availability of information relating to market and job prospects, and licensure requirements in particular occupational, professional, and vocational fields.  (*Ibid*.)

If, upon such a review, the Commission determines that an institution of higher education should not be eligible for participation in federal student aid programs, it must so notify the Secretary who in turn is required to terminate the participation of the institution in such programs.  (20 U.S.C. § 1099a-3(h)(1).)

The inquiry presented for determination is whether the Commission may adopt regulations in accordance with procedures established under the California Administrative Procedure Act (Gov. Code, §§ 11340-11529; "Act")[2] setting forth the "published State standards" required by Congress.  We conclude that the Commission has not been granted authority to promulgate such standards as regulations.

A "regulation" is a rule, regulation, order, or standard that has the force of law and which has been adopted by a public entity pursuant to authority conferred upon it by the Constitution or laws of this state, to implement, interpret, or make specific a law enforced or administered by it. (§ 811.6; *Peterson* v. *Long Beach* (1979) 24 Cal.3d 238, 245; *Associated Beverage Company* v. *Board of Equalization* (1990) 224 Cal.App.3d 192, 201.)  For purposes of the Act, a "regulation" is specifically defined in section 11342, subdivision (b) as follows:

> "`Regulation' means every rule, regulation, order, or standard of general application . . . adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one that relates only to the internal management of the state agency. . . ."

Regulations do not include informal guidelines, policy manuals, or recommended procedures which, while useful in establishing statutory standards, lack the force of law. (*Posey* v. *State of California* (1986) 180 Cal.App.3d 836, 849.)

We may assume for our purposes that the standards in question would be of general application adopted to implement, interpret, or make specific the law administered by the

---

[1]In his letter to the Secretary designating the Commission, the Governor observed in part:  "The responsibilities identified in federal law for the new state postsecondary review entity are consistent with the existing responsibilities mandated for the Commission under existing state law."  The new federal mandate does not appear to constitute a "major or substantial change" in the existing functions of the Commission as discussed below.  (Cf. 64 Ops.Cal.Atty.Gen. 503, 520 (1981).)

[2]Unidentified section references prior to footnote seven are to the Government Code.

Commission, would govern the Commission's procedures and not relate solely to the internal management of the Commission, and hence would meet the definition of a regulation as expressed in section 11342, subdivision (b).

Ordinarily, it would follow that the standards, regardless of how denominated, would be subject to adoption by the Commission in accordance with the procedures set forth in the Act. (See § 11347.5, subd. (a); *State Water Resources Control Board* v. *Office of Administrative Law* (1993) 12 Cal.App.4th 697, 703.) However, the enactment of formal regulations is an exercise of quasi-legislative power. (§ 11346; *Horwath* v. *Local Agency Formation Commission* (1983) 143 Cal.App.3d 177, 182.) Such power must be conferred upon an administrative agency by an express or implied delegation of legislative authority. (§ 11342.2; 56 Ops.Cal.Atty.Gen. 25, 30 (1973).)[3] In the absence of a statutory grant of authority, regulations may not be adopted by an administrative agency. (*People* v. *French* (1978) 77 Cal.App.3d 511, 519.)[4]

Specifically, section 11346 provides that "the provisions of this article [establishing the procedures for adopting regulations] are applicable to the exercise of any quasi-legislative power conferred by any statute heretofore or hereafter enacted." Section 11342.1 states that "[e]ach regulation adopted, to be effective, shall be within the scope of authority conferred and in accordance with standards prescribed by other provisions of law."[5] For purposes of the Act, section 11349, subdivision (b) defines "authority" as "the provision of law which permits or obligates the agency to adopt, amend, or repeal a regulation." The Office of Administrative Law, pursuant to its authority to adopt regulations in administering the Act (§§ 11342.4; 11349.1, subd. (c)),[6] has defined the term "authority" as:

"(1) A California constitutional or statutory provision which expressly permits or obligates the agency to adopt, amend, or repeal the regulation; or

---

[3] An unauthorized attempt by an administrative agency to exercise legislative power would violate the doctrine of the separation of powers. (Cal. Const., art. III, § 3.) Article IV, section 1, of the Constitution provides that "[t]he legislative power of this state is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the powers of initiative and referendum."

[4] In *State Water Resources Control Board* v. *Office of Administrative Law, supra*, 12 Cal.App.4th 697, no issue was presented in regard to the respective agencies' underlying authority to adopt regulations. (See Wat. Code, §§ 185, 13140 [State Water Resources Control Board]; §§ 13222, 13240 [regional water quality control boards].) Rather, the agencies argued that they were not required to exercise such authority. Thus, the views expressed in *French* were neither distinguished nor discussed by the court in ruling that the standards in question were regulations subject to the Act's procedural requirements.

[5] Section 11342.4 authorizes the Office of Administrative Law to adopt, amend, and repeal regulations, but otherwise provides that nothing in sections 11340-11356 "confers authority upon or augments the authority of any state agency to adopt, administer, or enforce any regulations."

[6] It is well settled that the administrative construction of a statute by those charged with its enforcement is entitled to great weight, and courts will not depart from such construction unless it is clearly erroneous or unauthorized. (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 460; *State Water Resources Control Board* v. *Office of Administrative Law, supra*, 12 Cal.App.4th at 701.)

"(2) A California Constitutional or statutory provision that grants a power to the agency which impliedly permits or obligates the agency to adopt, amend, or repeal the regulation in order to achieve the purpose for which the power was granted." (Cal. Code Regs., tit. 1, § 14, subd. (a).)

While we are thus directed to look solely to provisions of state law in ascertaining whether the Commission has been granted authority to adopt the standards in question as regulations, it is to be noted that the governing federal law does not attempt to delegate quasi-legislative power to the Commission. All that the federal Higher Education Act requires is for a state's program review to be conducted "in accordance with published State standards" consistent with state law. (20 U.S.C. § 1099a-3(d).) The requirement of publication does not, expressly or impliedly, grant the Commission the power to adopt regulations.

Has the Legislature expressly or impliedly delegated to the Commission the authority to promulgate the proposed standards as regulations? With respect to implied authority, the court expounded in *Addison* v. *Department of Motor Vehicles* (1977) 69 Cal.App.3d 486, 498:

"But the doctrine of implied powers is not without limitations. It cannot be invoked where the grant of express powers clearly excludes the exercise of others, or where the claimed power is incompatible with, or outside the scope of, the express power. For a power to be justified under the doctrine, it must be essential to the declared objects and purposes of the enabling act -- not simply convenient, but indispensable. Any reasonable doubt concerning the existence of the power is to be resolved against the agency."

With these principles of law in mind, we turn to the provisions of the Education Code[7] creating and defining the activities of the Commission. Section 66900 expresses the Legislature's intent to create a statewide agency to assure the effective utilization of public postsecondary education resources, to promote diversity, innovation, and responsiveness to student and societal needs through planning and coordination, and to make educational policy recommendations to the Legislature. The Legislature has expressly created the Commission to "be advisory to the Governor, the Legislature, other appropriate governmental officials, and institutions of postsecondary education." (§ 66901.)

Sections 66902 and 66903 grant specific powers and functions to the Commission. Section 66902 states:

"The commission shall have power to require the governing boards and the institutions of public postsecondary education to submit data on plans and programs, costs, selection and retention of students, enrollments, plant capacities and other matters pertinent to effective planning, policy development, articulation and coordination, and shall furnish information concerning such matters to the Governor and to the Legislature as requested by them."

Section 66903 provides in part:

"The commission shall have the following functions and responsibilities in its capacity as the statewide postsecondary education planning and coordinating agency and advisor to the Legislature and Governor:

---

[7]Hereafter, unidentified section references are to the Education Code.

"(1)   It shall require the governing boards of the segments of public postsecondary education to develop and submit to the commission institutional and systemwide long-range plans in a form determined by the commission after consultation with the segments.

"(2) It shall prepare a five-year state plan for postsecondary education which shall integrate the planning efforts of the public segments and other pertinent plans. . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(19)   It shall report annually . . . to the Legislature and the Governor regarding the financial conditions of independent institutions, their enrollment and application figures, the number of student spaces available, and the respective cost of utilizing those spaces as compared to providing additional public spaces. . . .

"(20) It shall, upon request of the Legislature or the Governor, submit to the Legislature and the Governor a report on all matters so requested which are compatible with its role as the statewide postsecondary education planning and coordinating agency. . . .

"(21)   It may undertake such other functions and responsibilities as are compatible with its role as the statewide postsecondary education planning and coordinating agency."

Neither in the foregoing nor in any other statutory provision relating to the Commission may the authority, express or implied, be found to exercise quasi-legislative power in adopting the proposed standards as regulations.

Had the Legislature intended for the Commission to adopt the federally required standards as formal regulations, it easily could have so provided.  For example, the Board of Governors of the California Community Colleges has been delegated "full authority to adopt rules and regulations necessary and proper to execute the functions specified in this section. . . ."  (§ 70901, subd. (c).) The Legislature clearly knows how to delegate quasi-legislative powers; it simply has not done so with respect to the adoption of the standards in question.  (Cf. *Safer* v. *Superior Court* (1975) 15 Cal.3d 230, 236, 238; *Board of Trustees* v. *Judge* (1975) 50 Cal.App.3d 920, 927.)

Here, the federally required standards are not authorized to be adopted by the Commission pursuant to a delegation of legislative power and thus are not cognizable under the Act's provisions.  It is concluded that the Commission may not adopt formal regulations setting forth the standards of review required by Congress for the state postsecondary review program.

* * * * *