Filed 11/27/24  Cox v. Renfree CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHARLES COX et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ERICA RENFREE et al., <br><br> Defendants and Respondents. | D081808 <br><br><br> (Super. Ct. No. 37-2021-00030158-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

LiMandri & Jonna, Charles S. LiMandri, Paul M. Jonna, Mark D. Myers, Jeffrey M. Trissell and Milan L. Brandon II for Plaintiffs and Appellants.

Quarles & Brady, Jeffrey P. Michalowski and Matthew N. Mushamel for Defendants and Respondents.

Charles Cox et al. (together appellants) appeal from a judgment of dismissal following a demurrer to their Second Amended Verified Petition for Writ of Mandate and Complaint (SAC) against Erica Renfree, Samer Naji,

and the San Diego Unified School District (the District) (together respondents).  The appellants filed the underlying action in response to the name change of a local high school.  Appellants contend:  (1) that the trial court erroneously sustained the defendants' demurrer to the SAC without leave to amend because they alleged sufficient facts to support each cause of action; and (2) that writ relief under Code of Civil Procedure[1] section 1085 is proper because sufficient facts were pled to show the defendants have a clear and present duty and that appellants have a clear, present and beneficial right to the performance of that duty.  As we explain, we conclude the demurrer to the mandamus petition was properly sustained, and appellants lack standing to pursue the non-mandamus causes of action in their complaint.  Accordingly, we affirm.

FACTUAL BACKGROUND

According to appellants' SAC and the exhibits attached therein,[2] the pertinent facts are as follows:

In 2020, two students of the Junípero Serra High School approached Renfree, their principal, about changing their school's mascot from the "Conquistadors."  Renfree learned additional information about their school's namesake, Junípero Serra, and decided to pursue changing both the mascot and the school's name.

---

[1]    Future undesignated statutory references are to the Code of Civil Procedure.

[2]    When reviewing a judgment of dismissal entered after a demurrer is sustained without leave to amend, we accept as true all properly pleaded factual allegations of the complaint and judicially noticed facts.  (§ 430.30, subd. (a); *Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 160, fn. 4.)

Renfree held multiple videoconference meetings with members of the school community, namely students, their parents, and staff, to discuss a name-change proposal. She started a public online petition related to the name change, posted a notice regarding the proposal on a neighborhood website, and gave interviews to two local news television programs. Throughout the process, Renfree provided her reasoning for seeking a name change and provided a suggested reading list for additional information. Renfree also solicited quantitative feedback through several polls. As school resumed in the fall of 2020, an alumni poll revealed 31.1% of those who responded favored keeping the school's current name; other respondents supported shortening the name to "Serra" (33.8%) or changing the name to "Tierra Canyon" (18.9 %) or "Canyon Hills" (16.2 %). As to the mascot, 42.4% wanted to keep the current mascot; and the remaining 57.6% favored changing the mascot to one of four other options.

Renfree contacted Naji, the Facilities Communications Supervisor for the District, to request that the District form a citizen advisory committee regarding a proposed name change, and in response, the District formed such a committee (the Committee). According to appellants, the Committee "represented the community of San Diego as a whole." The Committee received a summary of the feedback Renfree had obtained. Appellants allege the summary was "either outright false or clearly meant to deceive." They further assert that Renfree "knew that the community did not support a name change" and that she "made sure that the letters she received from community members were buried and never forwarded on."

The Committee recommended to the San Diego Unified School District Board of Education (the Board) that the high school's name be changed to "Canyon Hills High School" and the mascot to some variation of a

3

rattlesnake. Thereafter, the Board scheduled a public hearing for March 9, 2021, on the " 'Recommendation to Change the Name, Mascot, and Colors of Junipero Serra High School to Canyon Hills High School/Mat Kwatup KunKun, The Rattlers/ "ewii tenwai, Red and Black Primary Colors and Gray and White Complementary Colors." ' " Appellants do not dispute that the Board gave actual notice of the hearing, but they contend, instead, that the Board did not give notice that it intended to vote on the Committee recommendation at the hearing. At the public hearing, the Board heard from the students who initiated the mascot change and four representatives from the Kanap Kuahan Coalition.[3] Following the public hearing, the Board voted to adopt the recommendation.

PROCEDURAL BACKGROUND

On February 9, 2022, appellants filed the SAC, seeking to enjoin respondents from acting upon a name change and declaratory relief, or, in the alternative, a writ of mandate or prohibition compelling the District to have the renaming process "fully redone." The SAC alleges that anti-Catholic animus motivated the school name change, characterizing Renfree's actions as "vicious anti-Catholicism."

In the action before us, appellants assert that changing the name of the facility causes "irreparable harm to their statutorily and constitutionally protected rights" to freedom from the government establishment of religion, to freely exercise their own religion(s), and to equal protection under the law.

---

[3] According to appellants, the Kanap Kuahan Coalition is "a group of 'Kumeyaay tribal citizens' whose mission is to create 'safe and welcoming public spaces for all by removing symbols of colonialism, racism, slavery, and genocide' through efforts to 'remove statutes [*sic*], monuments, rename schools and raise awareness.' "

Although the court had previously sustained the District's demurrer without leave to amend, nevertheless, appellants again amended their pleading by including claims against the District in the SAC and seeking reconsideration of the order denying them leave to amend as to the District. Renfree and Naji moved to strike the SAC and respondents collectively demurred to the pleading. The court sustained the demurrer to the SAC without leave to amend and dismissed the action. Appellants now appeal.

DISCUSSION

1. *The Standard of Review*

" 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; see also *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.) "Because only factual allegations are considered on demurrer, we must disregard any 'contentions, deductions or conclusions of fact or law alleged [in the complaint.]' " (*People ex. rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 957 (*Gallegos*).) Further, "[i]f the allegations in the complaint conflict with the facts included in exhibits attached to or referenced in the complaint, 'we rely on and accept as true the contents of the exhibits.' " (*Crawley v. Alameda County Waste Management Authority* (2015) 243 Cal.App.4th 396, 403-404.)

2. *The District's Renaming Policy*

Effective as of January 26, 2021, the District's naming policy provided, in relevant part:

"NAMING OF FACILITIES

"The Board shall name district schools and other district-owned or leased buildings, grounds, and facilities in recognition of:

"1. Individuals and entities that have made outstanding contributions, including financial contributions, to the school community.

"2. Individuals who have made contributions of statewide, national, or worldwide significance.

"3. The geographic area in which the school or building is located.

"The Board encourages community participation in the process of selecting names. A citizen advisory committee shall be appointed by the Superintendent to review name suggestions and submit recommendations for the Board's consideration. Name changes shall be made by the Board in consideration of the committee's recommendation(s) or upon its own initiative.

"[¶] . . . [¶]

"Before adopting any proposed name, the Board shall hold a public hearing at which members of the public will be given an opportunity to provide input."

3. *Appellants Have Insufficiently Pleaded Their Cause of Action for Writ Relief*[4]

Appellants' first cause of action seeks a writ of mandate pursuant to section 1085 either to enjoin the District and the individual respondents

---

[4]    In light of our conclusion that the SAC fails to state a claim for mandamus, we assume but do not decide that appellants have sufficiently alleged standing for the SAC's first cause of action for a writ of mandamus.

"from enforcing, recognizing, or acting upon the purported name change" or, alternatively, to require that the renaming process be fully redone, "with new community input, a new vote by the Naming Committee, and a new vote by the Board of Trustees." Writ relief may be available in two circumstances: first, " ' " 'to enforce a mandatory and ministerial duty to act on the part of an administrative agency or its officers' " ' "; and second, " 'when a public agency has abused its discretion in carrying out a discretionary function.' " *Crestwood Behavioral Health, Inc. v. Baass* (2023) 91 Cal.App.5th 1, 15-16).

    a.   *School renaming is discretionary, not ministerial.*

Under section 1085, a writ of mandate may be issued by any court to a department or agency to compel the performance of an act which the law specially requires. To state a cause of action for a writ of mandate under section 1085, the appellants must demonstrate: "(1) a clear duty to act by the defendant; (2) a beneficial interest in the defendant's performance of that duty; (3) the defendant's ability to perform the duty; (4) the defendant's failure to perform that duty or abuse of discretion if acting; and (5) no other plain, speedy or adequate remedy exists." (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 915 (*Collins*).)

Traditional mandamus under section 1085 generally "may only be employed to compel the performance of a duty which is purely ministerial in character." (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 501 (*Solis*).) As distinguished from discretionary acts, a purely ministerial duty is a duty to perform an act "in a prescribed manner in obedience to the mandate of legal authority and without regard to [one's] own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists." (*Ibid.*) Purely ministerial acts include issuing a permit once qualifying conditions are met (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 480) or

applying a formula to calculate fees (*Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, 1194).

The renaming of a school is not a ministerial act. The District bears no duty to rename a school. The Board may rename a facility on its own initiative, may approve a proposed name change, or may maintain the status quo. It is neither bound by the Committee's recommendation, nor by any list of proposed names. There are multiple opportunities for the Board to exercise discretion and no specific outcome is pre-ordained when a name-change request is initiated. Even if appellants were successful in their demands that "the renaming process [be] fully redone" and "a new vote [be] taken] by the Naming Committee, and . . . the Board of Trustees," there is no predetermined outcome to the process, and the Board is free to exercise its "own judgment or opinion concerning [a renaming's] propriety or impropriety." (*Solis, supra*, 1 Cal.App.4th at p. 501.) We conclude that the District's school name-changing policy is, therefore, purely discretionary. However, that conclusion does not end the analysis.

b.  *The District did not abuse its discretion in the renaming process.*

While "mandate will not lie to control a public agency's discretion, that is to say, force the exercise of discretion in a particular manner, it will lie to correct abuses of discretion." (*Helena F. v. West Contra Costa Unified School Dist.* (1996) 49 Cal.App.4th 1793, 1799 (*Helena F.*).)

Here, to establish entitlement to relief via writ of mandamus against the District (as opposed to the individual respondents, who had no discretion as to the name-change decision) as to a discretionary act, appellants must demonstrate the act "was arbitrary, capricious or entirely without evidentiary support [and/or that] it failed to conform to procedures required . . . ." (*People for Ethical Operation of Prosecutors etc. v. Spitzer*

8

(2020) 53 Cal.App.5th 391, 407 (*Spitzer*).) An abuse of discretion occurs if an agency did not apply or properly interpret the governing law—here, a policy—or if there was no rational connection between the relevant factors, the choice made, and the purpose of the policy. (*California Hotel & Motel Assn. v. Industrial Welfare Com.* (1979) 25 Cal.3d 200, 212; *American Board of Cosmetic Surgery v. Medical Board of California* (2008) 162 Cal.App.4th 534, 547-548.)

"In determining whether an agency has abused its discretion, the court may not substitute its judgment for that of the agency, and if reasonable minds may disagree as to the wisdom of the agency's action, its determination must be upheld. [Citation.]" (*Helena F., supra*, 49 Cal.App.4th at p. 1799; see also *Lindell Co. v. Board of Permit Appeals* (1943) 23 Cal.2d 303, 315.) In a mandamus proceeding, the pertinent question, whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, is a question of law. (*Mike Moore's 24-Hour Towing v. City of San Diego* (1996) 45 Cal.App.4th 1294, 1303.) Here, because the Board elected to act, we consider whether the Board abused its discretion in the name-change undertaking. (*Collins, supra*, 41 Cal.App.5th at p. 915.)

Appellants correctly assert that the District was required to follow its "lawfully issued policies," but they do not allege that the District did not do so. Appellants contend respondents behaved fraudulently, having "had a predetermined intent to perpetrate a fraud on the public by holding sham forums, receiving sham public comment, and then making a name change a fait accompli without considering the actual interests of either the San Diego or Tierrasanta communities." But the SAC includes a complete dearth of specific facts to support these rhetorical points as to the District and its

9

Board. (*Gallegos, supra*, 158 Cal.App.4th at p. 957 [in review of a demurrer, a reviewing court must set aside " 'contentions, deductions or conclusions of fact or law' " and focus on the factual allegations].)

As we have noted, according to the District's policy: (1) the Superintendent must appoint a citizen advisory committee; (2) the committee must review name suggestions; (3) the committee must submit their recommendations to the Board; (4) the Board must hold a public hearing prior to adopting a proposed name; and (5) the public must be given an opportunity to provide input at that public hearing. Facilities may be named after individuals who have contributed to the school community, significant individuals, or the geographic area in which the facility is located. We address each of these in turn to determine whether appellants have sufficiently pled an abuse of discretion in the name-change process.

First, appellants do not claim that the District failed to form a citizen advisory committee. To the contrary, the SAC alleges that Naji, on behalf of the Superintendent, formed a citizen advisory committee. Further, appellants do not dispute that the Committee "represented the community of San Diego as a whole." Appellants allege the Committee did not represent Tierrasanta, but they do not point to any requirement that would necessitate the involvement of residents of Tierrasanta. The policy " 'encourages community participation,' " but does not mandate it, and does not define "community" to include neighborhoods adjacent to the facility at issue or any other portion of the San Diego community.

Second, the Committee reviewed the name-change petition and name suggestions. The Committee received the petition and letters that detailed the actions taken to voluntarily gather community input. The Committee then voted to recommend "Canyon Hills High School" as the new facility

10

name. Some Committee members opted to include explanations for their votes while others offered their own suggestions for school names, demonstrating their careful consideration of the petition. None of the factual allegations in the SAC support a claim that the Committee failed to review name suggestions.

Third, the Committee submitted their recommendations to the Board as required by the policy.

Fourth, the Board held a virtual public hearing prior to changing the facility's name.[5] On March 5, 2021, the District published the agenda for their March 9 Board meeting and included the Committee recommendation as an item for discussion. Appellants and any other interested parties were welcome to attend the meeting virtually. Appellants assert the virtual hearing "frustrated the ability of community members to participate" because they "lacked access to or did not possess knowledge of how to operate the required technology." Nonetheless, at the time of the hearing, governing law did not require the meetings to be held in person.[6] Appellants do not allege that they were turned away from the meeting or that the meeting was not public. None of the factual allegations in the SAC support a claim that the

---

[5]     Due to COVID-19, the meeting was held virtually. On March 17, 2020, the Governor authorized local and state legislative bodies to hold public meetings by teleconferencing, waiving the Brown Act's physical presence requirements. (Governor Executive Order No. N-29-20.) This waiver was in effect until February 2023. (Governor Proclamation Terminating State of Emergency, dated February 28, 2023.)

[6]     Appellants further contend neither they nor the community at large received notice "that the Board would be voting" on the name change. Notices regarding timing of the vote are not required in the facility name-change policy; the Board is required only to hold a public hearing prior to adopting the proposal.

11

Board failed to hold a public hearing prior to adopting the name-change proposal.

Finally, members of the public were given an opportunity to provide input at the public hearing. In fact, as alleged by appellants, six members of the public offered comments on the name change at the public hearing, including two students and four members of the general public. Appellants discount these comments from members of the public, contending "there was no meaningful public comment." While appellants fail to describe what "meaningful public comment" would be, we understand them to mean the speakers' viewpoints did not align with appellants'. Appellants do not allege that they attempted to speak but were denied the opportunity to do so at the public hearing. Further, as alleged by appellants, their counsel had submitted a letter to the Board in opposition to the name change prior to the public hearing.[7] Thus, despite appellants' failure to participate in the public hearing, the Board still received their input. None of the factual allegations in the SAC support a claim that members of the public were not given an opportunity to provide input to the Board at the public hearing or through some other means.

Although appellants do not argue it, we observe that the new name of the facility, "Canyon Hills High School" is based on "[t]he geographic area in which the school . . . is located," which is one of the naming options available to the Board under its naming policy.

In total, none of appellants' factual allegations support a claim that defendants violated the District's facility name-change policy. Absent such a

---

[7] In fact, appellants had made their views clear beginning in August 2020 when they first threatened a lawsuit should the District move forward with a name change.

showing, we cannot find their action to be arbitrary or capricious and we conclude the District adhered to the requirements of the policy.

We understand that the gravamen of the SAC focuses on the alleged inadequacy of efforts to survey the views of the Tierrasanta community, Renfree's alleged bias in favor of renaming, and alleged intentional and misleading inaccuracies in the information provided to the Committee and to the Board, as well as perceived anti-Catholic or anti-Christian motivations for pursuing the name change. But assuming the truth of all of these allegations, nothing in the District policy requires any particular level or locale of public engagement, any particular presentation of information to the Committee, or any assessment of motivations of any participant. Further, in light of the Board's broad discretion to make name changes "in consideration of the committee's recommendation(s) or upon its own initiative," any defects in the Committee's review might ultimately be irrelevant to the Board's decision.

Perhaps the Board, as the decision-maker, may be said to have abused its discretion if it approved the name change as a result of some constitutionally-prohibited motivation. However, the SAC does not allege that the Board itself had any unconstitutional motivations. At most, the SAC alleges that the Board was "wary" of Renfree's polling and that "somebody" told Renfree, in advance of the Board vote, that she could purchase benches for the school bearing the new school name (which appellants assert is evidence that the Board had decided to change the name prior to the public hearing and vote), and that after the vote, the Board "ratified" Renfree's alleged misconduct by sending an email praising the name change. Fairly read, the SAC does not allege an unconstitutional motivation by the Board, which retained sole discretion to change the school's name. Further,

13

although appellants contest the extent of community support for the name change, the SAC contains evidence that there was a level of such support, including from students, administrators, and the San Diego Human Relations Commission. Finally, we note that even if there had been a complete absence of community support, the Board nonetheless retained discretion under its policy to change the name.

Appellants rely upon *Maxwell v. City of Santa Rosa* (1959) 53 Cal.2d 274 (*Maxwell*) and *Gogerty v. Coachella Valley Junior College District* (1962) 57 Cal.2d 727 (*Gogerty*). They assert these cases are "indistinguishable" from their own. In both cases, the plaintiffs had alleged that the agency had complied with the applicable procedures but had done so with fraudulent intent in order to arrive at a predetermined result. Specifically, in *Maxwell*, plaintiffs alleged that the city council had decided to issue assessments against their properties and the procedures that followed were a sham, because the results were preordained. Similarly, in *Gogerty*, plaintiffs alleged that the community college district decided to acquire a site to build a school, and its efforts thereafter were fraudulent in light of the predetermined intent. In both cases, the reviewing courts concluded that the complaints sufficiently alleged that the agency had fraudulently avoided compliance with the law.

In contrast, while the SAC asserts generally that "Defendants had a predetermined intent to perpetrate a fraud on the public by holding sham forums, receiving sham public comment, and then making a name change a fait accompli without considering the actual interests of either the San Diego or Tierrasanta communities," the SAC does not allege that the District had predetermined the school name change. It alleges that Renfree and Naji

14

acted fraudulently; but as to the Board's conduct, the SAC alleges merely that:

> "potentially members of the Board of Trustees, also colluded with Defendants Renfree and Naji. Specifically, some officials became wary of Defendant Renfree's polls and wanted to send out a new poll, but that new poll was sidelined. The District's failure to further investigate Defendant Renfree's sham proceedings even after becoming wary of their sham nature constituted ratification."

An allegation of "potential" collusion falls far short of the predetermination claims alleged against the decision-making bodies in *Maxwell* and *Gogerty*. More significantly, in the case before us, rather than alleging that the Board had predetermined the naming issue, appellants have contended that the Board acted fraudulently by *ratifying* the alleged misconduct by Renfree and Naji.[8] But "ratification" during or after the Board's compliance with its policy is inconsistent with a claim of a preordained, intended result on the part of the Board, as was the case in *Maxwell* and *Gogerty*. Instead, at most, it leads to a conclusion that the Board was aware of potential defects in the characterization of the level of community support for the proposed name change but nonetheless chose to exercise its discretion to adopt the change without further investigation; and then declined to revisit a change, even in the face of opposition raised after the hearing. Thus, in addition to a failure to allege the District did not follow

---

[8]    As appellants explain in their reply brief, "the Complaint specifically pleads how *Maxwell* and *Gogerty* should apply to the three defendants, in subparagraphs (a), (b), and (c) of Paragraph 134. . . . Specifically, Paragraph 134(c) pleads fraud by the decision-making body through ratification. (See also 8-AA-1478 [¶¶102-105] [pleading on information and belief that the proper interpretation of an odd timeline and suspicious statements in emails is that the Board discovered the fraud and ratified it].)."

its policy as written, the SAC fails to allege that the Board had a predetermined, fraudulent intent to not follow its policy in its discretionary review of the proposed change.

In sum, as noted above, appellants must demonstrate the act " 'was arbitrary, capricious or *entirely without evidentiary support* [and/or that] it failed to conform to procedures required . . . ." (*Spitzer, supra*, 53 Cal.App.5th at p. 407, italics added.) They have failed to do so.

As to the mandamus cause of action, appellants do not seek leave to amend and make no argument to this court that they can amend their pleading to properly state a claim. Accordingly, we conclude that the trial court properly sustained the demurrer to the mandamus writ petition.

4. *Appellants Lack Standing to Pursue Their Non-mandamus Claims*

In their remaining causes of action, appellants assert that Renfree and Naji, acting in both their individual and official capacities, violated appellants' rights under the state and federal constitutions. We requested and received supplemental briefing from the parties on the issue of whether appellants had standing to bring their second, third, fourth, sixth, and seventh causes of action (referred to herein as the "non-mandamus claims").

" ' "At its core, standing concerns a specific party's interest in the outcome of a lawsuit. [Citations.] We . . . require a party to show that he or she is sufficiently interested as a prerequisite to deciding, on the merits, whether a party's challenge to legislative or executive action independently has merit." [Citations.] . . . .' " (*San Diegans for Open Government v. Fonseca* (2021) 64 Cal.App.5th 426, 434. (*Fonseca*).)

16

Appellants assert that they have both public interest standing and taxpayer standing to pursue their non-mandamus claims.[9]

a. *Appellants do not have public interest standing.*

We look, first, to their claimed public interest standing. Public interest standing has been consistently applied only in the context of mandamus proceedings. (*Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 873-874.) In *Reynolds*, the plaintiff sought a declaratory judgment that certain sales tax funds had not been properly spent; an order enjoining the use of such funds; and an order directing the city to repay funds that had been improperly spent. The *Reynolds* court noted that "public interest standing" referred to a mandamus proceeding in which a public right is asserted, and as to which the petitioner seeks enforcement of a public duty. The court concluded that Reynolds's action was not in mandamus, and therefore he could not assert public interest standing:

> "Reynolds fails to point to any authority applying the public interest exception outside a mandamus proceeding. . . . . Rather than seeking to procure enforcement of a clear ministerial government duty (*California Assn. of Medical Products Suppliers v. Maxwell-Jolly* (2011) 199 Cal.App.4th 286, 302), [his suit] seeks redress for past alleged misfeasance." (*Id.* at p. 874.)

So too here. Because the claims against Renfree and Naji for their past alleged misconduct in the renaming process are not brought as claims for

---

[9]    We note that after appellants filed this action, respondents removed the case to federal court; but the case was subsequently remanded to the superior court because the appellants could not establish standing to proceed in federal court. In federal court, appellants asserted they were proceeding under only California taxpayer and public interest standing, implicitly conceding they did not have a separate personal interest in the case as required for a federal claim.

17

mandamus, appellants cannot assert public interest standing as to such claims.[10]

Further, to the extent that the non-mandamus claims seek damages against Renfree and Naji in their individual capacities, public interest standing would not extend to such claims.[11] Traditional mandamus under section 1085 controls "a public official" in their performance of "official acts." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442.) Although traditional mandamus may "correct an abuse of discretion by an official *acting in an administrative* capacity," (*ibid.*, italics added) Renfree and Naji are not acting in an administrative capacity in their roles as private citizens. Their acts as individuals are, by definition, not "official acts."

b. *Appellants do not have taxpayer standing.*

Appellants also argue that they have "taxpayer standing" pursuant to section 526a, which confers standing upon a resident who has paid taxes to bring an action against any officer of a public agency to restrain "any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency . . . ." As the action is to prevent an illegal expenditure of public money, "[n]o showing of special damage to a particular taxpayer is required." (*Fonseca, supra*, 64 Cal.App.5th at p. 435.) Although the statute is "construed broadly" (*ibid.*), it is not limitless; the action must be an action to

<hr/>

[10] In addition to damages against Renfree and Naji, the non-mandamus claims also seek to enjoin them from engaging in any future misconduct; but the suggestion that they will be involved in future school-naming endeavors that would involve the same issues is speculative and unsupported.

[11] The causes of action against Renfree and Naji in their individual capacities allege the two acted "in their individual capacity as citizens acting in concert with a public body."

*prevent waste.* (See *Ceres v. Modesto* (1969) 274 Cal.App.2d 545, 554-555 (*Ceres*).)

" '[W]aste' as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion. To hold otherwise would invite constant harassment of city and county officers by disgruntled citizens and could seriously hamper our representative form of government at the local level. Thus, the courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure which does not meet with a taxpayer's approval." (*Ceres, supra*, 274 Cal.App.2d at p.555.) "Waste does not encompass the great majority of governmental outlays of money or the time of salaried governmental employees, nor does it apply to the vast majority of discretionary decisions made by state and local units of government." (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 482-483.)

The SAC alleges that appellants have standing because they pay taxes, and that renaming the school will involve waste, which "includes paying for the salaries of officials who are executing an illegal policy." First, we observe that appellants do not seek to enjoin the expenditure of public funds or to cancel or invalidate a contract making use of public funds. In this way, their claim is markedly different than many of the cases upon which they rely. For instance, they compare their supposed standing to the plaintiffs in the suit against a school district in *A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677 (*Fistes*).

In *Fistes*, the plaintiff, a taxpayer, complained that the school district improperly accepted a bid for campus improvement projects; the accepted bid was approximately twice the plaintiff's bid. (*Fistes, supra*, 38 Cal.App.5th at

19

pp. 682-683.) The *Fistes* action was clearly based on waste—the taxpayer sought to prevent the district from spending an excess $1,427,100. This sets the action in *Fistes* apart from the claims before us, as no challenged outlay of funds is alleged. Additional case law cited by appellants is similarly distinguishable.[12]

Second, appellants do not allege that the naming policy is unconstitutional or in some way illegal. When a "law is unconstitutional, then county officials may be enjoined from spending their time carrying out its provisions." (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 269 [taxpayer claim that a specific section of the California Code of Civil Procedure was violative of federal and state constitutional provisions].) In this way, taxpayer standing provides a general remedy to control illegal government activity even when the taxpayer is not directly harmed. (*White v. Davis* (1975) 13 Cal.3d 757, 763-765.) "[T]axpayer standing may be used to challenge ordinances that are unconstitutional on their face or in their application." (*Thompson v. Spitzer* (2023) 90 Cal.App.5th 436, 454.)

Here, none of appellants' causes of action arise from carrying out a law or policy that is alleged to be unconstitutional. Appellants challenge the respondents' implementation of the naming policy, but do not contend that the naming policy itself is unconstitutional or illegal. Accordingly, appellants cannot establish taxpayer standing based on waste from implementation of a flawed or unconstitutional law or policy.

---

12    See *Sturgeon v. County of Los Angeles* (2008) 167 Cal.App.4th 630, 639 (section 526a "waste" does not extend to the outlay of funds through a "beneficial, useful . . . [and] necessary" judicial benefits package that serve a public purpose); *Taxpayers for Accountable School Bond Spending v. San Diego Unified School Dist.* (2013) 215 Cal.App.4th 1013, 1031 (taxpayers had standing to bring a suit to stop a direct outlay of Prop S bond funds on stadium lights).

Further, as with public interest standing, taxpayer standing would not support the claims against Renfree and Naji in their individual capacities. By its terms, section 526a applies to actions "against any officer" of a local agency "or any agent, or other person, acting in its behalf." Similarly, to the extent the SAC seeks damages against Renfree and Naji, section 526a applies to actions seeking to "restrain[ ] and prevent[ ] any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency." It does not extend to claims for damages of alleged past misconduct.

In light of the foregoing, our independent review compels us to conclude that appellants cannot proceed under taxpayer standing.[13] This is consistent with the view that the law does not confer standing to advance "disputes which are primarily political in nature"; and the courts should not "attempt to enjoin every expenditure which does not meet with a taxpayer's approval." (*Ceres, supra*, 274 Cal.App.2d at p. 555.) We therefore conclude the trial court properly sustained the defendants' demurrer to each of appellants' causes of action.

Finally, appellants have not specifically requested leave to amend their pleading. " 'While such a showing can be made for the first time to the reviewing court [citation], it must be made.' " (*Rubenstein v. The Gap, Inc.* (2017) 14 Cal.App.5th 870, 881.) As to their asserted public interest standing appellants have, in their letter brief, argued that we should "reverse and remand so that Plaintiffs can bring all of their claims via a petition for a writ of mandate." Even if we were to construe this argument as a request for leave to amend their pleading, their pleading would still be insufficient. As

---

[13]    In light of our conclusion that appellants cannot establish waste sufficient to support taxpayer standing for their non-mandamus causes of action, we do not further consider whether they have standing to assert claims against Renfree and Naji in their individual capacities.

we discussed above, the public interest standing that allows members of the public to pursue traditional mandamus does not extend to claims against individuals in their personal capacity or to claims for damages. Were we to permit appellants to amend their pleading, they would be unable to pursue claims against Renfree and Naji as individuals or claims for damages.

As to taxpayer standing, while appellants now argue they could "add . . . allegations" regarding each appellant's "specific connection to the school," they fail to demonstrate how such an amendment would change the legal effect of the pleading. Pleading additional connections to the school does not transform this into an action to prevent waste; whether the claim is brought by a former employee or a fundraiser, the allegations as pled do not grant them taxpayer standing. (See, *HFH, Ltd. v. Superior Court of Los Angeles County* (1975) 15 Cal.3d 508, 513, fn. 3.)

## DISPOSITION

The judgment is affirmed. Respondents are entitled to their costs on appeal.

KELETY, J.

WE CONCUR:

IRION, Acting P. J.

DATO, J.